FRANCISCO FANO, ACTING TREASURER OF PUERTO RICO, Plaintiff, *v.* BANCO TERRITORIAL Y AGRÍCOLA DE PUERTO RICO, Defendant and Appellee; PRIMITIVO ROCAFORT, Intervener and Appellant.

No. 6491. Argued March 12, 1935.—Decided April 24, 1936.

*R. Castro Fernández* for appellant. *B. Fernández García, Attorney General,* and *R. Cordovés Arana, Assistant Attorney General,* for plaintiff. *Salvador Suau* for receiver of defendant bank.

MR. JUSTICE WOLF delivered the opinion of the court.

Primitivo Rocafort was steadily in the employ of the Banco Territorial y Agrícola de Puerto Rico for over thirty years. On the 3rd of November 1930, the following letter was addressed to him:

"I have the pleasure of informing you that at the meeting of the Board of Directors of this bank on November 3, and in consideration of your many years of faithful and efficient services to this institution, it was agreed that you be retired with a life pension of $150.00 effective immediately.

"The Board feels that in making this resolution it is fulfilling an obligation of gratitude due you, since it seems reasonable and just that you should retire from active service because of your advanced age.

"By this letter I want you to know that I join in the resolution of the Board and remain. . ."

Thereupon Rocafort retired and the said "pension" was regularly paid to him until September 30, 1932. On that date the bank went into the hands of a receiver and the latter repudiated the terms of the letter, *supra,* and refused to pay Rocafort any more money. The receiver not only refused to permit the intervener Rocafort to appear as a common creditor, but denied him the right to present a claim in accordance with his life expectancy computed at the rate of $150 a month. Perhaps the one is tantamount to the other.

The record is silent on the nature of the bank and its previous charter, but we may assume that it was duly incorporated under the banking laws of Puerto Rico. Likewise, there is nothing in the record to show whether the bank voluntarily went into the hands of a receiver, or whether its insolvency, cessation of payment, or what not, was forced upon it. As the suit was brought by the Acting Treasurer against the Banco Territorial y Agrícola, the probability is that the bank was forced into court and the receiver appointed.

In the suit brought by the Treasurer, as aforesaid, Primitivo Rocafort filed a petition in intervention. The intervention was allowed, but the court after a hearing decided that the intervener had no subsisting claim against the bank.

The court was of the opinion that only a donation in the amount of $150 a month was involved, that the donation was an act of mere liberality and revocable at the will of the donor, and that the intervener had no right to claim damages for a breach. The court said that the receiver acted well, because to pay the claim would be in detriment of the creditors of the bank whose participation in the fund would be diminished *pro tanto;* that a donation could only consist of present property and not of future one in accordance with sections 634 and 635 of the Civil Code; and the court went on to say:

"The donor in the present case, a juridical entity, now deprived of its functions as the result of the receivership, could not bind

itself to do a thing which it could not do in a contingency, which did happen, viz., the cessation of its business, the source of the profits from which the pension had necessarily to come, since no funds were set apart during the life of the donor for the payment thereof. Such payments were effected simply by monthly cash disbursements and it has not been shown that there existed any sum out of which such obligation could be met in the future.''

The court makes some reference to the case of *Succrs. of Abarca, S. en C.* v. *Central Vannina, Inc.,* 41 P.R.R. 336. We agree with the appellant that the facts of that case are dissimilar. The principal insistence of the appellant is that what happened here was a contract between the bank and Primitivo Rocafort; that contracts in Puerto Rico may be made with pure liberality as a consideration, and that when a person obliged to perform such a contract fails to do so, he is subject to a suit for damages for failure to perform the contract.

For the moment we shall assume with the appellant that the relation between the parties here was that of creditor and debtor or something equivalent thereto. We have found a certain number of cases which hold that where a corporation is involuntarily forced into the hands of a receiver, contracts for salaries cease. *Williamson County Bank & Trust Co.* v. *Roberts-Buford D. G. Co.,* 118 Tenn. 340, 101 S. W. 421; *Lenoir et al.* v. *Linville Imp. Co.,* 126 N. C. 922, 36 S. E. 185; see Note to this case in 51 L. R. A. 146; Thompson on Corporations (3rd ed.), sec. 1883, p. 477. The English cases decide to the contrary. The appellant relies in part on English cases. In England the right to a salary apparently partakes of the character of an incorporeal hereditament. Appellant also cites a case from Louisiana where a corporation, perfectly solvent, paid over a sum of money to the widow of an officer and stockholder for a part of a month. The court held that there was no opposition or objection from the creditors or stockholders; that the money paid was a gift and could not be recovered.

This is practically a case of first impression. We have found nothing exactly like it in the books. The original conception of the bank in making this allowance to Primitivo Rocafort was that it had funds disposable independently of the claims of its creditors or depositors. In other words, that there was an independent fund from which this money could be paid in the same way as donations are made. The underlying theory was that the bank was receiving profits from which it could make gifts or agree to pay a pension. Both parties assumed that the bank would be a going concern indefinitely. We are inclined to hold that this pension was only a claim on the bank if the latter had disposable funds. This even on the assumption that the "pension" was in the nature of a contract.

We are, however, disposed to agree with the court below that this pension was a donation and revocable at the instance of the donor or the person that became substituted for the donor, the receiver in this case.

The judgment appealed from will be affirmed.